**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KARANDEEP SINGH, M.D.,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:09-0439** |
| v. | : | **(CONABOY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **POCONO MEDICAL CENTER,** | : | |
| **POCONO HEALTH SYSTEM, and** | | |
| **DR. JONATHAN GOLDNER,** | : | |
| **Defendants** | : | |

# O R D E R[1]

Pending before the court is the plaintiff's discovery request for documents and testimony for which the defendants claim protection under the Pennsylvania Peer Review Privilege Doctrine. As directed by the court during a telephone conference, the parties filed letter briefs pertaining to this issue. (Doc. No. 30, Doc. No. 31).

Upon review of the plaintiff's filing, he alleges that, in September of 2006, he was hired as the Medical Director of Defendant Pocono Medical Center, ("PMC"), Cath Lab within the Department of Cardiology. At the same time, the plaintiff alleges that he contracted with PMC as a member of the Hospital's medical staff, and that pursuant to this contract, he became a member of various PMC staff committees, including the Peer Review

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

Committee.

According to the plaintiff, subsequent to his appointment as the Medical Director of the Cath Lab, he became aware of medically unnecessary stent procedures being performed on patients at PMC by another cardiologist, "Dr. Doe." The plaintiff alleges that these procedures and their billing caused him concern and, as a result, from early 2007, he verbally raised his concerns to Dr. Davis, PMC's Chief Medical Officer, and Defendant Goldner, the Chief of Staff. The plaintiff alleges that no action was taken regarding his concerns.

On or about November 19, 2007, the plaintiff claims that he sent an anonymous letter to Defendant PMC identifying thirteen patient cases performed by Dr. Doe where stent procedures had been performed that were neither medically necessary nor reasonable. Thereafter, in February of 2008, the plaintiff alleges that Defendant Goldner stated in a telephone conversation with the plaintiff that it was his belief, as well as the belief of Dr. Davis and the Defendant Hospital's administration, that the plaintiff had written the anonymous letter. Subsequent to this conversation, the plaintiff alleges that Defendant Goldner, Dr. Davis and the Hospital's administration began a campaign to harass and intimidate him and, at the same time, to protect Dr. Doe from the consequences of performing the unnecessary procedures and related questionable Medicare billings associated with the procedures. The plaintiff alleges that, rather than utilizing PMC's normal procedures and peer review committee to vet the plaintiff's concerns, Dr. Davis, Defendant Goldner

2

and PMC devised a plan to shield Dr. Doe from exposure and discredit the plaintiff in order to exclude him from the review process and compromise his ability to practice medicine at PMC and in Monroe County, generally.

The plaintiff claims that, as part of the defendants' coverup, Defendant Goldner obtained an outside opinion from the medical director of the Lehigh Valley Hospital Cath Lab regarding the questioned procedures. However, according to the plaintiff, that doctor's opinion confirmed the plaintiff's reports that Dr. Doe had undertaken medically unnecessary and unreasonable stent procedures. As a result, the plaintiff alleges that Defendant Goldner and PMC were forced to take additional action and did so by engaging an outside firm, the American Medical Foundation, ("AMF"), to undertake an unfocused review of the entire Cath Lab, rather than a focused peer review pertaining to Dr. Doe's thirteen cases, as would be standard protocol under the PMC Bylaws.

The plaintiff alleges that he expressed his concerns to PMC's administration and Defendant Goldner as to the insufficiency of the AMF review and his lack of participation. Thereafter, the plaintiff claims that he was subjected to various discriminatory and retaliatory acts by PMC and Defendant Goldner, including the filing of a complaint against the plaintiff in 2009 with the prosecution division of the Bureau of Professional and Occupational Affairs for unprofessional conduct based upon the allegation that the plaintiff had resigned under investigation for unlawfully accessing patient records. The plaintiff alleges that he had never been notified up until

3

when he had sought a reference from PMC some three months after his resignation that this charge had been made against him and that he was under "hospital review."

As a result of the plaintiff's allegations, he has initiated the instant action which claims violations of various federal and state statutes, including 31 U.S.C. §3730(h), the Federal Whistleblower's Protection Act; 42 U.S.C. §1981, retaliation; 28 U.S.C. §2201, the Federal Declaratory Judgment Act; 43 P.S. §142, *et seq.*, the Pennsylvania Whistleblower's Law; and 42 Pa.C.S.A. §7531, *et seq.*, the Pennsylvania Declaratory Judgment Act. In addition, the plaintiff has set forth state law claims for breach of contract, fraudulent inducement of employment, intentional interference with business and contractual relations and future economic opportunities, intentional infliction of emotional distress, negligent misrepresentation, fraudulent and/or intentional misrepresentation, constructive discharge due to hostile environment, wrongful discharge in violation of public policy, and false light invasion of privacy. (Doc. No. 3).

To date, the plaintiff claims that other than providing him with the results of the AMF report concerning its review of the plaintiff, which he already had, and the plaintiff's medical file and some other incidental documentation as produced in its initial Rule 26 disclosure, the defendants have failed to produce any documents which they maintain are protected from disclosure under the Pennsylvania Peer Review Protection Act, 63 P.S. §425.1-425.4.

4

The plaintiff has indicated his willingness to enter into a comprehensive confidentiality agreement and protective order to strictly regulate the use of these records for which peer review protection has been asserted. Despite this, the plaintiff contends that the defendants continue to resist the production of these records and testimony, claiming putative liability to third parties.

The plaintiff argues that his request for discovery and testimony to be elicited at depositions in this action advancing federal statutory and civil rights claims is not barred by the Pennsylvania Peer Review Protection Act. In support of this contention, the plaintiff cites to Ray v. Pinnacle Health, et al., 2008 WL 2168899 (M.D.Pa.). As stated by the plaintiff, in Ray, the plaintiff sought the production of peer review information in the form of quality assurance documents for all surgical medical staff at Pinnacle, and records of fair hearing and appeal review committees, for a six year period. In ruling on the plaintiff's request, the Honorable Sylvia H. Rambo found that the plaintiff's request was not barred by the Pennsylvania Peer Review Protection Act. In so finding, Judge Rambo stated as follows:

> In a suit under federal law, federal rather than state privilege law applies. Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000). Although every state including Pennsylvania recognizes some form of medical peer review privilege, no federal court has ever recognized such a privilege under federal law. The Third Circuit has not yet considered the issue, but the three circuits to do so have all declined to recognize a federal peer review privilege. See Adkins v. Christie, 488 F.3d 1324 (11th Cir. 2007); Virmani v. Novant Health Inc., 259 F.3d 284 (2001); Memorial Hospital for

> McHenry County v. Shadur, 664 F.2d 1058, 1063 (7th Cir. 1981). The general purpose of a peer review privilege is to encourage candor among medical staff by shielding the information from disclosure in medical malpractice suits. However, this purpose is not furthered by recognizing the privilege in civil rights cases. Recognizing this, Congress has specifically considered and rejected the applicability of a federal peer review privilege to civil rights lawsuits. See 42 U.S.C. §11111. This court declines the opportunity to be the first to recognize a federal peer review privilege. Because Plaintiff's suit is brought in federal court under federal law, the state peer review privilege does not apply, and the peer review material sought is not privileged.

Id. at *1.

Although the court declined to recognize a federal peer review privilege, the court indicated that it would retain its authority to protect the defendants' interests through other established means such as protective orders, confidentiality agreements, and when appropriate, by disclosure only after in-camera review of these documents. In Ray, the court noted that a protective order was already in place, which required the plaintiff to protect the confidentiality of information disclosed in discovery.

In the case presently pending before the court, the defendants argue that this court should recognize a federal peer review privilege arguing that, although Judge Rambo stated otherwise in her opinion in Ray, their research has identified a number of federal courts which have adopted such a privilege. According to the defendants, the earliest to do so was Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C. 1970), followed by others such as Mewborn v. Heckler, 101 F.R.D. 691 (D.D.C. 1984), Whitman v. United

6

States, 108 F.R.D. 5 (D.C.N.H. 1985), and Laws v. Georgetown University Hosp., 656 F.Supp. 824 (1987).

Concerning the above cases cited by the defendants, with the exception of Law, which relied solely on the decision in Bredice, all of these cases pre-date the enactment of the Health Care Quality Improvement Act of 1986, ("HCQIA"), 42 U.S.C. §11101, et seq., in which Congress provided qualified immunity from suit to officials who conduct peer reviews, but did not protect documents created in the peer review process. See Johnson v. Nyack Hospital, 169 F.R.D. 550, 560 (S.D.N.Y. 1996). See also Swarthmore Radiation Oncology, Inc. v. Lapes, 1993 WL 517722 (E.D.Pa.)(no federal statutory privilege existed under the HCQIA, as the Act only states that participants in legitimate peer review activities are immune from damages stemming from the peer review process, and only information reporting adverse actions taken against physicians to a national health-care-quality clearinghouse, not the information gathered during the peer review process, is confidential and not to be disclosed).

Although Congress has had two occasions to consider whether to extend the peer review privilege to materials produced by medical peer reviews: once in 1986, when the HCQIA was enacted, and again in 1987 when the statute was amended, Congress declined to do so on both occasions. In University of Pennsylvania v. EEOC, 493 U.S. 182 (1990), the Supreme Court observed that any available privileges created by Congress

7

are to be strictly construed, and that privileges not created by Congress were not to be created lightly under federal common law. Id. at 189-92. Given the general principle that privileges are strongly disfavored in federal practice, the court here is unwilling to find a privilege where it appears that Congress had considered the competing concerns and did not establish such a privilege.

In addition to their reliance on the above cited cases which pre-date the HCQIA, the defendants argue that the peer review privilege was also recognized by the courts in Weekoty v. United States, 30 F.Supp.2d 1343 (D.C.N.M. 1998)(identifying the privilege as "self critical analysis") and Brem v. DeCarlo, Lyon, Hearn and Pazourek, 162 F.R.D. 94 (D.Md. 1995)(magistrate judge in federal question case recognized application of Maryland state statutory medical peer review privilege), which were decided subsequent to the passage of the HCQIA.

In Weekoty, the court recognized a "self-critical analysis privilege" in a Federal Tort Claims Act case. In doing so, the court acknowledged that Congress, through the HCQIA, established confidentiality only for certain records relating to the peer review process, but made no attempt to discuss Congress' failure to adopt a blanket federal peer review privilege. See Syposs v. United States, 63 F.Supp.2d 301, 308 (W.D.N.Y. 1999). Instead, the court relied upon Jaffee v. Redmond, 518 U.S. 1 (1996), in which the Supreme Court, citing to the fact that all fifty states and the District of Columbia had enacted some form of the psychotherapist privilege, recognized a federal

psychotherapist-patient privilege. By analogy, the court in Weekoty reasoned that "the nearly unanimous state legislative recognition of the self-critical analysis privilege in the medical peer review context confirms the appropriateness of recognizing the privilege in this forum." Weekoty, 30 F.Supp.2d at 1346-47. However, as the set forth by the court in Syposs:

> the need of the individual to be assured that sensitive personal information, a precondition to obtaining competent care, will not be revealed without his or her consent cannot be compared to the institutional interest in eliminating incompetency and improving the quality of care. Physicians and hospitals have an overriding professional obligation and economic incentive to improve the quality of medical care they provide thereby potentially reducing malpractice insurance rates and improving profitability regardless of the availability of strict confidentiality. Whatever degree of confidentiality may also be needed to obtain participation in effective peer reviews can be provided by the courts without imposing inflexible obstacles to their fundamental role of seeking truth and doing justice.

Syposs, 63 F.Supp.2d at 308.

As have other courts, this court declines to follow the determination of the court in Weekoty. See Syposs, supra; Tucker v. U.S., 143 F.Supp.2d 619 (S.D.W.Va. 2001).

Finally, in Brem, the only claim in that case to which the discovery request at issue related was a state defamation claim. Pursuant to Fed.R.Evid. 501, the court was required to apply the state peer review privilege statute. The court did not determine the existence of a parallel federal peer review privilege. Thus, the court finds Brem to be inapposite.

9

In light of the above, the court will grant the plaintiff's request for discovery for which the defendants' claim protection under the peer review privilege.

As a final matter, the parties indicate that they had engaged in efforts to negotiate an acceptable confidentiality agreement with respect to the information for which the defendants claim peer review privilege, but that those efforts failed because the plaintiff refused to provide the defendants indemnification from liability to third parties, including Dr. Doe, as a result of any voluntary disclosure of privileged information. In light of the instant order which finds that the information sought is not protected by the peer review privilege and that the defendants must provide the requested discovery, the need for such indemnification is obviated. That being the case, the parties should easily be able to agree upon language for an appropriate confidentiality agreement to protect the sensitive nature of this information while at the same time allowing relevant discovery to proceed in an orderly fashion.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**(1)** the plaintiff's request for discovery for which the defendants claim protection under peer review privilege is **GRANTED**; and

**(2)** within **thirty (30) days** of the date of this order, the

defendants are to provide the plaintiff with the requested discovery.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** June 15, 2010

O:\shared\ORDERS\2009 ORDERS\09-0439-06.wpd